**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ALBERT BROWN O/K/A** **FLOYD HAMILTON,** | |
| **Plaintiff,** | |
| **v.** | **C.A. NO.: 1:24-cv-12687-JEK** |
| **CITY OF BOSTON, PETER** **O'MALLEY, & DOES 1-10,** | |
| **Defendants.** | |

<u>**PLAINTIFF ALBERT BROWN'S OPPOSITION TO DEFENDANT CITY OF**</u>
<u>**BOSTON'S MOTION TO DISMISS**</u>

Plaintiff Albert Brown ("Mr. Brown" or "Plaintiff") respectfully requests this Honorable Court deny Defendant City of Boston's ("the City" or "Defendant") motion to dismiss in full.[1] As grounds for and in support thereof, Mr. Brown states that Counts One and Ten are sufficiently pled. As such, the City's motion to dismiss must be denied.

## I.      <u>INTRODUCTION</u>

Mr. Brown's Complaint "contain[s] sufficient factual matter …to state a claim to relief that is plausible on its face" regarding Counts One and Ten. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) (internal quotations omitted).

First, Count One of the Complaint sufficiently states that the City had policies, customs, and practices in place that for many years allowed the Boston Police Department ("BPD") to commit constitutional violations against criminal defendants, before, during, and after Mr. Brown's investigation and wrongful conviction, and that it was these very policies, customs, and

---

[1] *See* Defendant City of Boston's Memorandum of Law in Support of its Motion to Dismiss ("Defendant's Memo"), Doc. 8.

practices that led to Mr. Brown's wrongful conviction and incarceration. The Complaint adequately demonstrates a specific pattern of constitutional violations establishing the City knew or should have known of the alleged constitutional violations occurring, namely the widespread and accepted practice of fabricating evidence, coaching witnesses to testify falsely, failing to properly investigate legitimate crimes and suspects, failing to properly train and supervise its police officers, covering up known misdeeds, failing to discipline officers, and withholding critical exculpatory evidence. Importantly, the Complaint specifically establishes a pattern of Detective O'Malley's – *the lead detective in Plaintiff's case* – failure to be truthful and lawfully execute his duties as a BPD officer and detective before, during, and after Mr. Brown's investigation and conviction. The factual assertions in Plaintiff's Complaint unequivocally satisfy Mr. Brown's burden to state a claim to relief that is plausible, and evidence the specific unconstitutional policies and procedures endorsed by the City.

Second, Count Ten of the Complaint sufficiently asserts a state law claim for *respondeat superior* against the City, alleging that the City is liable as a principal for torts committed by its employees, officials, and officers acting within the scope of their office or employment.

## II.   LEGAL STANDARD

Pursuant to Federal Rules of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, however, Plaintiff's Complaint in fact provides detailed factual allegations. *See* Fed. R. Civ. P. 8. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). Where a

plaintiff pleads factual content which allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct, a claim has facial plausibility. *Id.*

Furthermore, in determining whether a complaint states a plausible claim is a context-specific task "that requires the reviewing court to draw on its judicial experience and common sense." *Id.* At 679. In ruling on a motion to dismiss, a court "may augment the facts and inferences [within the complaint] with data points gleaned from the documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011); *see Lopes v. Riendeau*, 177 F. Supp. 3d 634, 666 (D. Mass. 2016) (holding that the court may take judicial notice of judicial decisions).

### III.   ARGUMENT

**A.    Mr. Brown's *Monell* claim against the City is adequately pled and must not be dismissed.**

Mr. Brown's Complaint sufficiently states a "plausible" claim. The Complaint alleges that before, during, and after Mr. Brown's investigation and wrongful conviction, the City acted deliberately indifferent to the constitutional violations perpetrated by the BPD against criminal defendants and that it was these policies and customs that directly resulted in Mr. Brown's wrongful conviction and prolonged unjust incarceration. Compl. ¶¶ 33-49.

There is no dispute that a municipality can be liable for constitutional violations under §1983 when its failures to train, supervise, or discipline its employees result in the deprivation of constitutionally protected rights.

A plaintiff asserting a *Monell* claim must (1) "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" and (2) "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of Cnty. Com'rs v. Brown*, 520 U.S. 397, 403-04 (1997); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). "Official

municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Brown*, 520 U.S. at *404* (holding that acts performed pursuant to a 'custom' may subject a municipality to liability on the theory that the practice is so prevalent as to have the force of law). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Though the "touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other §1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision making channels." *Id.* at 690-691.

In this context, a plaintiff may show that said policies and/or customs "amount to a deliberate indifference to the rights of persons with whom [police] come in contact." *Connick* 563 U.S. at 61; *see also Haley*, 657 at 52 ("Triggering municipal liability on a claim of failure to train requires a showing that municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies.").[2] Deliberate indifference requires proof that municipal actors and/or policymakers disregarded a "known or obvious consequence" of its action or inaction. *Connick*, 563 at 61 (internal quotations and citations omitted). Such proof generally requires demonstrating a "pattern of similar constitutional violations." *Id.* at 62 (internal quotations and citations omitted).

---

[2] The same standard applies to failure to supervise or discipline claims. *See Rodriques v. Furtado*, 950 F.2d 805, 813 (1st Cir. 1991); *Bordanaro v. McLeod*, 871 F.2d 112, 1158-59 (1st Cir. 1989).

The deliberate indifference standard can be demonstrated where the need for "more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).  Fault is thus established "[w]hen city policy makers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 653 U.S. at 61.

Here, Mr. Brown's Complaint alleges that the policies, customs, and practices of the City and BPD directly resulted in a violation of his constitutional rights. The Complaint asserts that before and after Mr. Brown's arrest and conviction in 1984 and 1986 respectively, the City and BPD had a widespread and accepted policy, custom, and practice of fabricating evidence, coaching witnesses to testify falsely, failing to properly and honorably investigate legitimate leads and suspects, failing to properly train and supervise its police officers, covering up known misdeeds, failing to discipline officers, and withholding exculpatory evidence. Compl. ¶¶ 33-49. Furthermore, the Complaint alleges that despite this well chronicled history, the City disregarded the known and obvious consequences of these violations and shortcomings, amounting to a deliberate indifference to the unconstitutional effects this had on its citizens, and most prominently upon minority citizens such as Mr. Brown and his then co-Defendant Joseph Jabir Pope ("Mr. Pope"). *See Commonwealth v. Pope*, 489 Mass. 790 (2022).  Moreover, the Complaint claims that the City's failure to reconcile the known, but ignored, unlawful and unconstitutional conduct of BPD officers and detectives, as well as its failure to properly supervise, train, and discipline its officers and detectives, was the "moving force" that directly caused the deprivation of Mr. Brown's state and federal constitutional rights. *Id.* ¶¶ 53-55.

To support these allegations, Mr. Brown's Complaint cites to, *inter alia*: (1) specific instances of wrongdoing in his case; (2) specific instances of misconduct in numerous other cases; (3) a 1974 disciplinary proceeding involving Defendant Detective O'Malley; (4) a July 1991 Press Release by the U.S. Department of Justice concerning the misconduct surrounding the Carol Stuart murder investigation, helmed by Defendant Detective O'Malley; and (5) a 1992 report by the Management Review Committee ("St. Clair Report"), detailing the City and BPD's prolonged failure to adequately supervise, train and discipline its officers. Compl. ¶¶ 17-49. The references and support as alleged in the Complaint demonstrate that the City was well aware of BPD's shortcomings concerning training, supervising, and disciplining its officers and detectives, coupled with the complete failure to address these inadequacies created an environment wherein officers like Defendant BPD Detective O'Malley could conduct investigations with disregard for constitutional rights, such as withholding evidence, misrepresenting facts, and corrupting witnesses, all to the detriment of the citizens of the Commonwealth, such as Mr. Brown.

The allegations presented in the instant Complaint are analogous to those in *Haley v. City of Boston*, 657 F. 3d 39 (1st Cir. 2011) and are most instructive to the Court. In *Haley*, the First Circuit held that the allegations brought by Haley triggered a cognizable §1983 claim, surviving a motion to dismiss. In *Haley*, the plaintiff alleged that during the 1970s the City and BPD had a policy and practice of failing to disclose exculpatory evidence, which caused the violation of the plaintiff's rights when the City failed to disclose certain inconsistent statements made by key prosecution witnesses, asserting the violation was due to a policy and practice that persisted because of no legitimate oversight or training. The Court in *Haley* held that "[g]iven the volume of cases involving nondisclosure of exculpatory information and the instant failure to disclose statements that clearly would have undermined the prosecution's theory of the case, we think that

the municipal liability claims pleaded by Haley step past the line of possibility into the realm of

plausibility" and "*although couched in general terms*, Haley's allegations contain sufficient factual

content to survive a motion to dismiss and open a window for pretrial discovery." *Haley* 657 F. 3d

at 53. (emphasis added).

The same is true here. The prosecution's key witness, Benny DeJesus ("Benny") made

prior inconsistent statements that were never disclosed, nor were Detective O'Malley's suspicions

of Benny's veracity. Nevertheless, Detective O'Malley and other members of BPD investigating

this murder perpetuated the falsely tailored testimony of Benny. Compl. at ¶¶18-24. Moreover, in

1984 following his arrest, during an interrogation with Detective O'Malley, Mr. Brown identified

Ricky Tisdale and Ricky Veal as the two individuals that murdered Efrain DeJesus ("Efrain"). *Id.*

at ¶¶27-31.[3] Notwithstanding the information relayed by Mr. Brown, prior to his arrest and

approximately one week following the murder of Efrain, Mr. Tisdale was arrested while in

possession of the actual murder weapon. *Id.* at ¶27. Despite all of this, Detective O'Malley and

BPD investigators did not adequately investigate Mr. Tisdale or Mr. Veal's likely involvement in

Efrain's murder. *Id.* at ¶¶29-31. The failure to properly investigate these leads occurred due to the

BPD's failure to properly train its officers and detectives during a time when the City was on notice

that this failure and/or omission in its training program resulted in BPD violating the constitutional

rights of its citizens. *See Id.* at ¶¶40-44.

Mr. Brown's Complaint also incorporated and adopted by reference the allegations set forth

in the complaint filed in *Joseph Jabir Pope v. City of Boston, et al.*, C.A. 1:24-CV-10980. Compl.

¶56. While not a *per se* companion case, the underlying facts and circumstances of both wrongful

convictions are parallel and at the outset the men were tried together. Notably, following the filing

---

[3] Of note, during this interrogation Detective O'Malley violated Mr. Brown's constitutional rights by failing to cut off questioning. *See Commonwealth v. Hamilton,* 411 Mass. 313, 319, n. 3; *see also* Compl. ¶ 32, n. 6.

of Mr. Pope's complaint, the City moved to dismiss his §1983 claim pursuant to Fed. R. Civ. P. 12(b)(6) on similar grounds as to the instant motion. The Court (J. Casper) on November 7, 2024, issued a Memorandum and Order denying the City's motion to dismiss, finding: "[i]n light of Haley and its progeny, the Court agrees that Pope's allegations are sufficient at the pleading stage to allege a Monell claim that the City was on notice of constitutional violations." *See Joseph Jabir Pope v. City of Boston, et al.*, C.A. 1:24-CV-10980 (D. Mass. 2024) Memo. and Order, Nov. 7, 2024, Doc.48. The facts alleged herein are identical.

Here, the City relies upon an opinion and order from *Qualls v. Roache,* 2024 WL 1333610 (D. Mass. 2024), in which the court found the plaintiff's allegations, that cited a 1992 special commission report that reviewed complaints filed against BPD, as well as seven criminal convictions that were later overturned, were too general to meet the stringent standard required to establish municipal liability. *See Qualls*, 2024 WL 1333610. There the court concluded that the complaint "did not allege particular acts of willful misbehavior by officers that were effectively countenanced by the City of Boston." *Id.* at *2. The City's reliance upon *Qualls* misses the mark here. Here, Mr. Brown has alleged a *specific* pattern of willful misbehavior that occurred over the course of decades both before and after Mr. Brown's investigation and conviction, beginning as early as 1974. The cases, reports, instances of misconduct, and other references incorporated in Mr. Brown's Complaint bookended a specific pattern of constitutional violations like those experienced by Mr. Brown between 1979 and 1989, while simultaneously demonstrating a specific pattern of Detective O'Malley's continual willful misbehavior before, during, and after Mr. Brown's investigation and conviction. To further support Mr. Brown's allegations, the Complaint cites to the St. Clair Report which was issued in 1992 and concerned BPD's inadequate training, supervision, and discipline, during the critical relevant time. Compl. ¶¶ 40-49. It is a reasonable

inference that the City was on notice of this misconduct within the BPD and yet failed to take sufficient action to train, supervise, or discipline its officers. Like *Haley* and the *Pope* case, the allegations here are sufficiently plead to "step past the line of possibility into the realm of plausibility" even if "couched in general terms." *Haley* 657 F. 3d at 53. Accordingly, the City's motion to dismiss Count I must be denied.

**B.     Mr. Brown's *respondeat superior* claim against the City is adequately pled and must not be dismissed.**

Mr. Brown sufficiently states a claim for *respondeat superior* against the city, alleging that the City is liable as a principal for torts committed by its employees, officials, and officers acting within the scope of their office or employment.

In its motion the City cites specifically to sections 10(c) and (h) of the Massachusetts Tort Claims Act ("MTCA") to establish that the Defendant cannot be held liable for (1) an intentional tort committed by its employees or (2) negligent failure of its employees to adequately investigate or identify suspects and briefly argues that Plaintiff's allegations against the BPD officers fall into one of these categories. This, however, is not an exhaustive view of Plaintiff's allegations. While Plaintiff concedes that the MTCA does not apply to cases where a public employee commits an intentional tort, or the allegation concerns a negligent failure to adequately investigate or identify a suspect, it is well recognized in the Commonwealth that "[t]he MTCA waives the governmental immunity 'that public employers' have against tort liability for the 'negligent or wrongful' conduct of their employees done 'while acting within the scope of [their] office or employment." *See FBT Everett Realty, LLC. Massachusetts Gaming Comm'n*, 489 Mass. 702, 718 (2022), *quoting* G.L. c. 258, § 2. The City's argument misses the mark.  Mr. Brown's Complaint plainly establishes a pattern of misconduct by BPD officers, including Detective O'Malley. To the extent the conduct

alleged was negligent, wrongful, or reckless, and contributed to Mr. Brown's injuries, the City is liable. This is exactly what was pled by Plaintiff.

As such, Count Ten of the Complaint adequately alleges that the City is liable as a principal for torts committed by its employees, officials, and officers, and should survive this motion.

### IV.    CONCLUSION

For the reasons herein, Mr. Brown respectfully requests this Honorable Court <u>deny</u> the City's motion to dismiss in its entirety.

### V.    REQUEST FOR ORAL ARGUMENT

Pursuant to L.R. 7.1(d), the Plaintiff respectfully requests the Court schedule a hearing for oral arguments on the instant motion and opposition.

Dated:  January 31, 2025

> Respectfully submitted,
> For the Plaintiff
> By His Attorneys,
>
> */s/ Frank C. Corso, Esq.*
> */s/ Paolo G. Corso, Esq.*
> Frank C. Corso, Esq. (BBO#545552)
> Paolo G. Corso, Esq. (BBO#703315)
> Corso Law, LLC
> 492 Winthrop Street, Suite 5
> Rehoboth, MA 02769
> Tel: 774-901-2677
> Fax: 774-901-2678
> fcc@corsolaw.com
> pgc@corsolaw.com

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document filed through the ECF System on January 31, 2025, which will serve notice to all counsel of record.

> */s/ Paolo G. Corso, Esq.*